IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted on Briefs on August 20, 2013

# MARK HAWKS and DESIGN CONSULTANTS, INC.
## v.
# CD DEVELOPMENT, LLC and CHRIS DAVIS

**Appeal from the Circuit Court of Madison County**
**No. CO8292   Roy B. Morgan, Jr., Judge**

---

**No. W2013-00499-COA-R3-CV - Filed September 25, 2013**

---

This appeal involves the tolling of the statute of limitations for a breach of contract. The plaintiff architect rendered services to the defendant real estate developer, and the developer failed to pay for the architect's services. Approximately four years later, the architect recorded a lien against the real property to secure the indebtedness. The developer then promised the architect he would pay the indebtedness if the architect released the lien. The architect released the lien but still was not paid. Approximately four years after that, the architect filed this lawsuit against the developer to collect the debt. The developer asserted that the architect's claim was barred by the six-year statute of limitations. After a trial, the trial court held that the statute of limitations was tolled under the doctrine of equitable estoppel, so the architect's lawsuit was timely filed. The trial court entered a judgment in favor of the architect. The developer appeals only on the issue of whether the claim was time-barred. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Andrea Sipes Lester, Jackson, Tennessee, for the Defendant/Appellants, Chris Davis and/or CD Development, LLC

Lanis L. Karnes and Christopher G. Covellis, Jackson, Tennessee, for the Plaintiff/Appellees, Mark Hawks and Design Consultants, Inc.

# OPINION

## FACTS AND PROCEDURAL HISTORY

Plaintiff/Appellee Mark Hawks is a certified architect, employed by his own design firm, Plaintiff/Appellee Design Consultants, Inc. In 1998 and 1999, Mr. Hawks was hired by Defendant/Appellant Chris Davis and Mr. Davis's now-defunct development company, Defendant/Appellant CD Development LLC, to perform architectural services.

The projects for which Mr. Hawks was hired included Mr. Davis's development of a restaurant, the Peking Restaurant. While Mr. Hawks was working on the Peking Restaurant project, the parties signed a written contract setting forth the fee due from Mr. Davis for Mr. Hawks' services and providing for interest of 1.5% per month on unpaid amounts. On April 23, 1999, pursuant to the contract, Mr. Hawks presented Mr. Davis with an invoice for the work on the Peking Restaurant project, totaling $17,246.32. Mr. Davis did not pay Mr. Hawks' invoice.

In the years that followed, Mr. Hawks spoke to Mr. Davis on a number of occasions, and in fact they continued to work together on other projects. Still no payment for Mr. Hawks' work on the Peking Restaurant project ever materialized.

In August 2003, after Mr. Hawks heard that Mr. Davis planned to sell the development that included the Peking Restaurant, Mr. Hawks filed a lien on the property for an amount that exceeded $60,000, for Mr. Hawks' unpaid services. Shortly after filing the lien, Mr. Hawks spoke to Mr. Davis about it. Mr. Hawks also received a faxed letter from Mr. Davis's attorney that indicated Mr. Davis would pay Mr. Hawks if he released the lien to allow the sale of the development to proceed. Expecting payment from Mr. Davis, Mr. Hawks released the lien. However, Mr. Hawks never received the promised payment.

Several years later, on September 26, 2008, Mr. Hawks filed the instant lawsuit against Mr. Davis and his development company in the Circuit Court of Madison County, Tennessee. The lawsuit alleged breach of the parties' contract and sought damages plus pre-judgment interest, post-judgment interest, and the costs of collection. The amended answer filed by Mr. Davis asserted, *inter alia,* that Mr. Hawks' action was time-barred under the applicable statute of limitations.[1] Discovery and various delays ensued.

---

[1]The amended answer also asserted a third-party complaint against Home Banking Company. The third-party complaint is not at issue in this appeal.

The trial court conducted a bench trial on November 1, 2012. The trial court heard testimony from Mr. Hawks, Mr. Davis, and Charles Patterson, the attorney who sent the letter to Mr. Hawks regarding the lien. The trial court also heard telephone conversations between Mr. Hawks and Mr. Davis, recorded by Mr. Hawks without Mr. Davis's knowledge.

At the conclusion of the trial, the trial court rendered an oral ruling in favor of Mr. Hawks. The trial court found that the parties had a valid contract, breached by Mr. Davis on April 23, 1999. Addressing why the lawsuit was not barred by the six-year statute of limitations for such a claim, the trial court held that Mr. Davis was estopped from asserting the statute of limitations or, in the alternative, the statute of limitations was tolled. Citing the parties' testimony, the recorded telephone conversations, and the letter to Mr. Hawks from attorney Patterson, the trial court made factual findings that, in 2003, Mr. Davis promised Mr. Hawks that he would pay for Mr. Hawks' work on the Peking Restaurant project if Mr. Hawks released the lien he had placed on the property. The trial court found that the letter to Mr. Hawks from attorney Patterson, on behalf of Mr. Davis, likewise promised payment to Mr. Hawks on the Peking Restaurant project. Mr. Hawks released the lien in reasonable reliance on these promises, the trial court found. Based on these factual findings, the trial court held that Mr. Hawks' complaint was not time-barred.

On January 16, 2013, the trial court entered a written order awarding judgment in favor of Mr. Hawks in the amount of Mr. Hawks' original invoice, $17,246.32, plus 1.5% interest per month as per the contract, plus pre-judgment interest back to the date the lawsuit was filed, plus post-judgment interest. The order declined Mr. Hawks' request for his attorney fees and assessed costs against Mr. Davis. The written order attached a transcript of the trial court's oral ruling setting forth its findings of fact and conclusions of law. From this order, Mr. Davis now appeals.

## ISSUE ON APPEAL AND STANDARD OF REVIEW

On appeal, Mr. Davis argues that the trial court erred in holding that the complaint is not barred by the statute of limitations.

Because this matter was decided by the trial court without a jury, the trial court's findings of fact are reviewed *de novo* on the record, with a presumption that those findings are correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). For the evidence to preponderate against the trial court's factual finding, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 70–71 (Tenn. Ct. App. 2000); *Realty Shop v. RR Westminster Holding*., 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). The trial court's conclusions of law are reviewed *de novo*, with no presumption of correctness. *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co*., 194 S.W.3d

415, 424–25 (Tenn. Ct. App. 2005). It is also well settled that a trial court's assessment of the witnesses' credibility is entitled to great weight on appeal because the trial court saw and heard the witnesses testify; thus, we defer to the trial court's assessment on credibility absent clear and convincing evidence to the contrary. ***C & W Asset Acquisition, LLC v. Oggs***, 230 S.W.3d 671, 676 (Tenn. Ct. App. 2007).

## ANALYSIS

On appeal, Mr. Davis argues that the complaint in this case was not timely filed and that the trial court erred in holding to the contrary. Mr. Davis does not dispute that he made promises over the years to Mr. Hawks that he would pay Mr. Hawks for the Peking Restaurant project. Mr. Davis contends, however, that he told Mr. Hawks that he did not intend to pay him the full amount requested on the Peking project, and notes his own testimony to that effect. Mr. Davis argues that it was unreasonable for Mr. Hawks to believe Mr. Davis's continued promises to pay when Mr. Davis in fact had never made any attempt to settle the outstanding indebtedness. Mr. Davis claims that he was prejudiced in his defense by Mr. Hawks' unreasonable delay in filing suit.

It is undisputed in this case that the applicable statute of limitations is six years, as set forth in Tennessee Code Annotated § 28-3-109(a)(3). It is also undisputed that the complaint was filed over eight years after the trial court held that the cause of action accrued. Therefore, the claim is time-barred absent an exception that tolls the statute of limitations.

In this case, the trial court held that the six-year statute of limitations was tolled by application of the doctrine of equitable estoppel. Our Supreme Court recently discussed equitable estoppel as a defense to the running of the statute of limitations:

> The doctrine of equitable estoppel arises from the equitable maxim that no person may take advantage of his or her own wrong. In the context of a defense predicated on a statute of limitations, the doctrine of equitable estoppel tolls the running of the statute of limitations when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period. When the doctrine of equitable estoppel is applicable, it prevents a defendant from asserting what could be an otherwise valid statute of limitations defense.

> The party invoking the doctrine of equitable estoppel has the burden of proof. Thus, whenever a defendant has made out a prima facie statute of limitations defense, the plaintiff must demonstrate that the defendant induced him or her to put off filing suit by identifying specific promises, inducements, suggestions, representations, assurances, or other similar conduct by the

defendant that the defendant knew, or reasonably should have known, would induce the plaintiff to delay filing suit. The plaintiff "must also demonstrate that [his or her] delay in filing suit was not attributable to [his or her] own lack of diligence."

The doctrine of equitable estoppel applies only when the defendant engages in misconduct. Examples of circumstances which have prompted the courts to invoke the doctrine of equitable estoppel to prevent a defendant from asserting a statute of limitations defense include: . . . (2) when a defendant promises to pay or otherwise satisfy the plaintiff's claim without requiring the plaintiff to file suit, . . .

In the context of defenses predicated on a statute of limitations, the doctrine of equitable estoppel always involves allegations that the defendant misled the plaintiff. The focus of an equitable estoppel inquiry "is on the defendant's conduct and the reasonableness of the plaintiff's reliance on that conduct." Determining whether to invoke the doctrine of equitable estoppel to counter a statute of limitations defense requires the courts to examine the facts and circumstances of the case to determine whether the defendant's conduct is sufficiently unfair or misleading to outweigh the public policy favoring the enforcement of statutes of limitations.

Plaintiffs asserting equitable estoppel must have acted diligently in pursuing their claims both before and after the defendant induced them to refrain from filing suit. The statute of limitations is tolled for the period during which the defendant misled the plaintiff. The plaintiff must demonstrate that suit was timely filed after the plaintiff knew or, in the exercise of reasonable diligence, should have known that the conduct giving rise to the equitable estoppel claim had ceased to be operational. At the point when the plaintiff knows or should know that the defendant has misled him or her, the original statute of limitations begins to run anew, and the plaintiff must file his or her claim within the statutory limitations period.

***Redwing v. Catholic Bishop for Diocese of Memphis***, 363 S.W.3d 436, 460-61 (Tenn. 2012)(internal citations and footnotes omitted). ***See also Hobbs v. Brainerd***, 919 S.W.2d 337, 338 (Tenn. Ct. App. 1995)(statute of limitations tolled by debtor's acknowledgment of debt and expression of willingness to pay).

The trial court below found that Mr. Davis clearly and unequivocally told Mr. Hawks that he would pay Mr. Hawks for his work on the Peking Restaurant project if Mr. Hawks

released the lien on the restaurant property, based at least in part on the taped telephone conversations between Mr. Hawks and Mr. Davis. It found that Mr. Davis's oral promises were confirmed in writing by attorney Patterson on behalf of Mr. Davis. The trial court found that Mr. Hawks released the lien in reliance on Mr. Davis's assurances.

The factual findings by the learned trial judge are well-supported in the record. The tapes of the parties' telephone conversations show that Mr. Davis promised to pay Mr. Hawks the Peking Restaurant debt. Mr. Hawks' testimony, credited by the trial court, establishes that Mr. Hawks released the lien based on Mr. Davis's assurance of payment. Despite this, the promised payment from Mr. Davis never occurred.

Mr. Davis notes that he testified at trial that he had previously told Mr. Hawks that he would not pay the full amount. Even if this testimony were credited, it does not change the clear promises to pay made by Mr. Davis to Mr. Hawks in the taped telephone conversations. The trial court found that Mr. Davis made "clear, unequivocal promises to pay" the Peking Restaurant debt to Mr. Hawks. The fact that Mr. Davis did not state a specific amount in the telephone conversations makes no difference. This argument is without merit.

Mr. Davis also argues on appeal that Mr. Hawks' reliance on Mr. Davis's assurances was not reasonable. The record fully supports the trial court's holding that Mr. Hawks' reliance was reasonable. This argument is also without merit.

Mr. Davis also argues that Mr. Hawks' delay in filing suit prejudiced Mr. Davis's ability to present a defense in the lawsuit. Without saying so, Mr. Davis appears to be asserting the doctrine of laches as a reason not to hold that the statute of limitations is tolled under the doctrine of equitable estoppel. The equitable defense of laches must be predicated on the trial court's finding of inexcusable, negligent, or unreasonable delay on the party asserting the claim with resulting prejudice to the defendant. *Finova Capital Corp. v. Regel,* 195 S.W.3d 656, 660 (Tenn. Ct. App. 2006). Laches is an equitable defense and requires the finder of fact to determine that it would be inequitable or unjust to enforce a claimant's rights. *Id.* In his appellate brief, Mr. Davis does not point to any place in the record in which he raised the doctrine of laches to the trial court. Even if such an argument had been made to the trial court, application of the doctrine of laches is not warranted under the facts of this case. This argument is likewise without merit.

In short, considering the record as a whole, we find no error in the trial court's holding that Mr. Hawks' complaint was timely filed.

On appeal, Mr. Hawks asks this Court for an award of his attorney fees on appeal. He cites neither a basis in his contract for such an award of attorney fees nor a statute. There being

no legal basis for an award of attorney fees on appeal, we respectfully decline the request. Our holdings herein pretermit all other issues raised on appeal.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are to be taxed against Defendant/Appellants Chris Davis and CD Development, LLC, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE